**Opinion filed May 19, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00227-CR

_____

**OLIVIA CARRION, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 350th District Court**

**Taylor County, Texas**

**Trial Court Cause No. 10892-D**

---

## M E M O R A N D U M   O P I N I O N

The jury found Appellant, Olivia Carrion, guilty of possession of a controlled substance, methamphetamine, by aggregate weight of four grams or more but less than 200 grams, a second-degree felony.[1]  The trial court assessed her punishment at confinement for a term of ten years, suspended her sentence, placed her on

---

[1]TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(6), 481.115(a), d; TEX. PENAL CODE ANN. § 12.33(a) (West 2011).

community supervision for ten years, and imposed a fine of $4,000.[2]  Appellant does not challenge the sufficiency of the evidence.  In a single issue on appeal, she asserts that her trial counsel rendered ineffective assistance of counsel.  Appellant bases that complaint on trial counsel's decision to elicit testimony from a defense witness that "opened the door" to otherwise inadmissible evidence of Appellant's prior deferred adjudication community supervision for the manufacture and delivery of cocaine. We affirm.

## I. *Evidence at Trial*

Rodney Smith, an officer with the Abilene Police Department, had worked as a narcotics agent for more than twenty years.  Agent Smith had completed arrests for both possession of controlled substances and possession with intent to deliver controlled substances.  Smith explained that a typical user purchases less than a gram of methamphetamine, which sells for $100, and will divide that amount into four or five units to ingest separately; the controlled substances are generally packaged in a small Ziplock baggie.

Smith had a "no knock" search warrant for Roy Carrion's residence, which was on the outskirts of Abilene in Taylor County.  Agent Smith and several other officers arrived at the residence (surveillance cameras were located on the outside of the home); they entered after they forced the door open.  They found three individuals in the residence: Appellant; her husband, Roy Carrion; and a nine-year-old child.  Agent Smith read Roy and Appellant their *Miranda*[3] rights.  Agent Smith contacted Child Protective Services to take temporary custody of the child.

Agent Smith reported that inside the residence the officers found a large amount of methamphetamine worth approximately $3,500; plastic baggies; a small

---

[2]The range of punishment for a second-degree felony is imprisonment for not more than twenty year or less than two years, and an optional fine of up to $10,000 may also be imposed.  TEX. PENAL CODE ANN. § 12.33 (West 2011).

[3]*Miranda v. Arizona*, 384 U.S. 436 (1966).

knife; Q-tips; electrical tape; a digital scale; methamphetamine "smoking pipes", a "plastic straw," and other drug paraphernalia; a magnetic key holder; a safe key on a key ring; a "War and Peace" book "stash box"; a digital safe and a Sentry safe; a ledger and handwritten notes with numbers and letters that corresponded to drug amounts and weights; men's clothing; and a wallet. The police also found a woman's red coin purse; a pink garment bag; a pink purse; a metal container; a cigarette case; a manicure case; women's clothing, purses, bags, and shoes; a backpack; women's feminine products and other items; and mail addressed to Appellant at the residence.

Some methamphetamine was found in "plain view," and more was found in the purse, the cigarette case, and the manicure case. Appellant admitted that the purse was hers. Methamphetamine also was found in several other items located in the residence. Appellant and Roy Carrion were in control of the premises when Agent Smith arrived.

Ashley Zelinski is a forensic scientist with the Texas Department of Public Safety. She has a bachelor's degree in chemistry. Zelinski testified that she tested the substances that were provided to her. The test results showed that the substances were methamphetamine and weighed 34.04 grams.

Appellant testified on her own behalf. Appellant testified that she is disabled and has several medical conditions, including chronic pancreatitis, celiac disease, fibromyalgia, chronic depression, vitamin D deficiency, and other problems: in her words, "a long list."[4] She married Roy Carrion in early 2012. After Roy's trial and conviction for possession with the intent to deliver more than four grams but less than 200 grams of methamphetamine, which arose out of the same search as this case, Appellant was diagnosed as bipolar and schizophrenic. Appellant said that her

---

[4]Esther Mejia, Appellant's mother, explained that Appellant had arthritis, post-traumatic stress disorder, obsessive-compulsive disorder, and chronic depression.

purse was in the living room and that she did not use the pink purse. She bought one safe to keep her medications in, but her husband had access to that safe; she said that another safe, the black one, was his safe. She explained that they put cameras outside the house because outside the house is scary and there are snakes and coyotes around.

Appellant admitted that she was on probation for a misdemeanor theft charge, but she asserted that she had never failed a drug test.[5] She was mad that her husband had drugs in the house because it was not safe for her daughter, who is "her life." She testified that her husband is a convicted drug dealer and was on probation for a drug conviction. She admitted that her master bathroom is decorated in Texas Longhorn colors and symbols and that her husband had several Longhorn tattoos and a "T" and "S" tattoo, but denied that she knew what a Texas Syndicate symbol was.

Esther Mejia, Appellant's mother, also testified. Mejia was shocked when the police came to the residence and found drugs and other items. Appellant's parents owned the residence, but the house was for Appellant to use. Mejia said that she saw Appellant use marihuana as a teenager but that she never saw Appellant, as an adult, use illegal drugs. Mejia testified that she helps Roy, a convicted drug dealer, with money for his commissary account. Mejia was aware of Appellant's theft probation. On cross-examination, Mejia testified that she knew that Appellant had a prior drug charge and that Appellant had completed probation.

## II. *Analysis*

Appellant complains that her trial counsel's performance was deficient because counsel "opened the door" to the admission of evidence of Appellant's deferred adjudication probation for manufacture and delivery of cocaine in 1998.

---

[5]Matt Acklin, Appellant's probation officer, testified that she had failed to report twice and that, although her probation had expired, there was a pending motion to revoke; he said that she did pass all of her drug tests.

She asserts that, but for this error, the outcome of her trial would have been different. The standard of review for Appellant's complaint of ineffective assistance of counsel is whether counsel's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *see Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); *Diaz v. State*, 380 S.W.3d 309, 311 (Tex. App.—Fort Worth 2012, pet. ref'd). The *Strickland* test has two prongs: (1) a performance standard and (2) a prejudice standard. *Strickland*, 466 U.S. at 687.

For the performance standard, we must determine whether Appellant has shown that counsel's representation fell below an objective standard of reasonableness. *Id.* If so, we then determine whether there is a reasonable probability that the outcome would have been different but for counsel's errors. *Wiggins v. Smith*, 539 U.S. 510, 534 (2003); *Strickland*, 466 U.S. at 686; *Andrews v. State*, 159 S.W.3d 98, 102 (Tex. Crim. App. 2005). The reasonable probability must rise to the level that it undermines confidence in the outcome of the trial. *Isham v. State*, 258 S.W.3d 244, 250 (Tex. App.—Eastland 2008, pet. ref'd).

The second prong of *Strickland* focuses on prejudice to the defendant. "[T]he analysis of the prejudice prong turns on whether the deficiency made any difference to the outcome of the case." *Walker v. State*, 406 S.W.3d 590, 599 (Tex. App.—Eastland 2013, pet. ref'd) (quoting *Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012)). "This is a heavy burden which requires a 'substantial,' and not just a 'conceivable,' likelihood of a different result." *Id.* at 599 (quoting *United States v. Wines*, 691 F.3d 599, 604 (5th Cir. 2012)).

A failure to make a showing under either prong of the *Strickland* test defeats a claim of ineffective assistance of counsel. *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Andrews*, 159 S.W.3d at 101. A reviewing court need not consider both prongs of the *Strickland* test and can dispose of an ineffectiveness

claim on either prong. *Walker*, 406 S.W.3d at 594 (citing *Cox v. State*, 389 S.W.3d 817, 819 (Tex. Crim. App. 2012)); *see Strickland*, 466 U.S. at 697.

Appellant asserts that her trial counsel was deficient when he asked Mejia, "Did [Appellant] have any history with drugs?" Mejia answered that Appellant had experimented with marihuana when she was fourteen. In response, the State was permitted to ask Mejia if she was aware of Appellant's arrest and deferred adjudication in 1998. Mejia answered that she was aware of those things. Appellant contends that the result of her trial would have been different but for the admission of this otherwise inadmissible evidence. She claims that her trial counsel employed an unsound trial strategy that undermined her defense.

Rule 609(c)(2) of the Texas Rules of Evidence prohibits the admission of prior convictions in which the defendant successfully completed probation. *Hernandez v. State*, No. 11-11-00123-CR, 2013 WL 2301989, at *3 (Tex. App.—Eastland May 23, 2013, pet. ref'd) (mem. op., not designated for publication). Relying on *Robertson* and *Ex parte Menchaca*, we recently held that defense counsel's performance fell below an objective standard of reasonableness when defense counsel, during the defendant's direct examination, elicited evidence of two prior convictions that were inadmissible under Rule 609. *Vasquez v. State*, No. 11-10-00334-CR, 2012 WL 4826966, at *5–6 (Tex. App.—Eastland Oct. 11, 2012, pet. ref'd) (mem. op., not designated for publication) (citing *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Ex parte Menchaca*, 854 S.W.2d 128, 131 (Tex. Crim. App. 1993)). Even if we assume, without deciding, that defense counsel's performance at trial was deficient, because of the overwhelming evidence of guilt, the outcome of Appellant's trial would not have been different.

Agent Smith reported that, inside the residence, they found a large amount of methamphetamine worth approximately $3,500, plastic baggies, electrical tape, drug paraphernalia, a safe and a safe key on a key ring, and one other safe. The police

also found a woman's red coin purse; a pink garment bag; a pink purse; a cigarette case; a manicure case; women's clothing, purses, bags, and shoes; women's feminine products; and mail addressed to Appellant at the residence. The police found methamphetamine in a purse that Appellant admitted was hers; methamphetamine also was found in several other places. Appellant was one of two adults at the residence, which had been purchased by her parents for her use, and methamphetamine was found in plain view in several places in the residence.

Because of the overwhelming evidence of Appellant's guilt of possession of a controlled substance, Appellant has failed to show that she was prejudiced by counsel's performance at trial; she has not shown that the outcome would have been different if her previous arrest and deferred adjudication in 1998 had not been admitted as evidence. After a review of the record, we hold that Appellant has failed to meet the second prong of the *Strickland* test and, thus, has not established that she received ineffective assistance of counsel. We overrule Appellant's sole issue on appeal.

### III. *This Court's Ruling*

We affirm the judgment of the trial court.


MIKE WILLSON

JUSTICE


May 19, 2016

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

7